## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

IN RE:                 :      **Chapter 13**

                    :

**PATRICIA ANN PITTMAN,**    :

                    :

        **DEBTOR**        :

_____ :     **Bankruptcy No. 14-17665-AMC**

Ashely M. Chan, United States Bankruptcy Judge

### OPINION

## I.     INTRODUCTION

Under Pennsylvania law, when property is sold under a tax sale, the prior owner retains the right to redeem the property within nine months of the acknowledgment of the sheriff's deed issued in connection with the sale. The question before the Court is what happens with respect to the prior owner's right of redemption when the prior owner files for bankruptcy after the sale of the property takes place, but before the redemption period expires. Specifically, may the prior owner effectively redeem the property by treating the purchaser's right to payment of the redemption amount as a secured claim under the Bankruptcy Code which can be modified and paid over time under the debtor's plan pursuant to § 1322(b)(2).[1] As discussed below, the Court has concluded that a prior owner may treat the purchaser's right to payment of the redemption amount as a secured claim which may be modified under § 1322(b)(2).

## II.     FACTS AND PROCEDURAL HISTORY

Prior to filing for bankruptcy, the Debtor and her family resided at 3848 N. Smedley Street in Philadelphia, Pennsylvania ("Property"). Stipulation ¶ 1, ECF No. 39. She and her

---

[1] All statutory references are to the United States Bankruptcy Code ("Bankruptcy Code" or "Code") unless otherwise stated or indicated by the context.

brother, Ronnie L. Pittman, co-owned the Property as tenants in common. *Id.* Over a four year period, unpaid real estate taxes accrued on the Property totaling $4,235.67 ("Tax Delinquency"). *Id.* ¶ 8.

Based upon the Tax Delinquency, the City of Philadelphia ("City") sought and obtained an order to sell the Property at a tax sale. *Id.* ¶¶ 9–10. On October 21, 2013, Sahil S. Singhal ("Purchaser") purchased the Property at a tax sale for $13,100.00, thereby satisfying the Tax Delinquency in full.[2] *Id.* ¶ 2. Afterwards, the Sheriff of Philadelphia County prepared a deed to the Property in favor of the Purchaser which was acknowledged by the Sheriff's office on December 30, 2013. *Id.* ¶ 3. The deed was subsequently recorded on February 26, 2014. *Id.*

Under applicable state law, the Debtor had nine months from December 30, 2013, the date that the deed was acknowledged, to exercise her right to redeem the Property. City Mem. Supp. Obj. to Second Am. Plan ("City's Br.") 3, ECF No. 44. Prior to the expiration of the redemption period, on September 23, 2014 ("Petition Date"), she filed a voluntary Chapter 13 bankruptcy petition. The Debtor also filed a Chapter 13 plan on the Petition Date in which she proposed to pay the Purchaser $13,100.00, the amount that he paid to purchase the Property in the tax sale. Ch. 13 Plan ¶ 2.B(a)(i), ECF No. 8.

On February 10, 2015, the Purchaser filed a secured proof of claim in the amount of $17,709.47 ("Claim") in connection with his purchase of the Property at the tax sale. On February 23, 2015, the Purchaser amended his Claim and listed his secured claim as $16,908.11 ("Amended Claim").

On February 23, 2015, the City filed an objection to the plan based upon, *inter alia*, the Debtor's failure to pay the full amount of the Amended Claim filed by the Purchaser in the

---

[2] The City listed the fair market value of the Property as $64,700.00 in 2014 and 2015.

amount of $16,908.11. Obj. to Proposed Ch. 13 Plan ¶¶ 19–21, ECF No. 24. The Debtor

subsequently filed a first amended Chapter 13 plan and then a second amended Chapter 13 plan

("Plan"), both of which proposed to pay the Purchaser the full amount of his Amended Claim of

$16,908.11. Am. Ch. 13 Plan ¶ 2.B(a)(i), ECF No. 31; Second Am. Ch. 13 Plan ¶ 2.B(a)(i), ECF

No. 34. The Plan proposed to pay the Purchaser the entire amount of the Amended Claim, albeit

in equal monthly installments over the thirty-six month life of the Plan. Second Am. Ch. 13 Plan

¶¶ 1, 2.B(a)(i). The Plan also provided that, upon completion of all payments to the Purchaser, he

would reconvey the Property to the Debtor. *Id.* ¶¶ 6–7.

On April 26, 2015, the City filed an objection to the Plan arguing that: (1) the Debtor did

not properly file a motion under Federal Rule of Bankruptcy Procedure 6008 to redeem the

Property; (2) the Purchaser does not hold a "claim," as defined under § 101(5), which can be

modified under § 1322(b)(2); and (3) the redemption amount cannot be paid to the Purchaser in

installments under applicable state law. Obj. to Proposed Second Am. Ch. 13 Plan ¶¶ 14, 22,

ECF No. 37.

On June 30, 2015, the Court held a confirmation hearing on the Plan. Although the

Purchaser did not file an objection to the Plan, he attended the confirmation hearing and orally

lodged his objection. Ultimately, the Court adjourned the confirmation hearing and ordered the

parties to file briefs addressing the objections. After the parties filed their briefs, on December 1,

2015, a confirmation hearing on the Plan was held and the matter was taken under advisement.

On December 21, 2015, the Debtor filed a supplemental letter ("Letter") addressing one of the

cases raised by the Purchaser and the City in their briefs. The Court subsequently gave the

Purchaser and the City an opportunity to respond to the Debtor's Letter. On January 19, 2016,

the City filed a response to the Debtor's Letter.

## III.    DISCUSSION

Although the Debtor's Brief in Support of Plan Confirmation ("Debtor's Brief"), ECF

No. 40, challenges the City's standing to object to confirmation of the Plan, the Court notes that

the Purchaser appeared at the initial confirmation hearing to join in the City's objection to

confirmation and also filed a timely brief opposing confirmation in accordance with this Court's

briefing schedule. Since the Debtor does not dispute the Purchaser's standing to object to

confirmation and the Purchaser's position appears to be virtually identical to the City's position,

it is unnecessary for the Court to resolve whether the City has standing to object to confirmation

of the Plan and the Court will proceed as though the Purchaser was the sole objector. The issue

of the City's standing is therefore moot.

The Purchaser argues that he holds absolute title to the Property and that the Debtor may

only regain ownership of the Property by paying the redemption amount in full within nine (9)

months of the acknowledgement of the deed under applicable state law. His position is that the

Bankruptcy Code does not alter his state law right to be paid the redemption amount in such

manner. The Purchaser asserts that

> 1) under state law . . . a redemption must be exercised in accordance with the
> particular statute that the Sheriff's Sale took place under; 2) state law dictates that
> the Purchaser receives absolute title to the Subject Property at the conclusion of the
> Sheriff's Sale leaving the Debtor with no ownership interest in the Property, only a
> right of redemption; and, 3) the Debtor can only exercise a right of redemption upon
> the full payment of the Redemption Amount.

Purchaser's Br. Supp. Obj. to Second Am. Plan ("Purchaser's Br.") 4–5, ECF No. 46.[3] The

Purchaser also argues that the "only authority for exercising the redemption in bankruptcy is Fed.

---

[3] No page numbering appears in the Purchaser's brief from page two to page eleven, and subsequent
numbering is intermittent and inaccurate. To account for this, the Court will cite all pages of the brief as if they had
been correctly numbered.

R. Bankr. P. 6008" and that the Debtor has failed to file a motion to redeem pursuant to Rule

6008. *Id.* at 21. Finally, the Purchaser argues that he does not hold a "claim" as defined under

§ 101(5) which can be modified under § 1322(b)(2). *Id.* at 27.

The Debtor argues that: (1) the Plan meets all of the requirements for confirmation under

§ 1325(a); (2) the Purchaser holds a defeasible interest "to secure payment of a debt" which is

"subject to extinguishment upon payment of that debt"; and (3) the Purchaser holds a claim

under § 101(5) which may be modified by the Plan pursuant to § 1322(b)(2). Debtor's Br. 3. The

Debtor also argues that Rule 6008 is not applicable to confirmation of the Debtor's Plan and that

§ 108 does not negate the rights afforded to a debtor under § 1322(b)(2). *Id.* at 4.

## A.    The Purchaser Does Not Hold Absolute Title to the Property

The Purchaser essentially argues that the Property does not constitute property of the

estate under § 541(a) because he purportedly holds absolute title to it. Section 541(a)(1) of the

Bankruptcy Code provides that "property of the estate" includes "all legal or equitable interests

of the debtor in property as of the commencement of the case." In *United States v. Whiting

Pools, Inc.*, 462 U.S. 198 (1983), the Supreme Court stated that § 541(a)'s legislative history

demonstrates that the language of this provision was intended to sweep broadly to include "all

kinds of property, including tangible or intangible property, causes of action . . . and all other

forms of property currently specified in section 70a of the Bankruptcy Act." *Id.* at 205 n.9 (first

quoting H.R. Rep. No. 95-595, pt. 4, at 367 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963,

6323; then quoting S. Rep. No. 95-989, pt. 1, at 82 (1978), *as reprinted in* 1978 U.S.C.C.A.N.

5787, 5868); *accord In re O'Dowd*, 233 F.3d 197, 202 (3d Cir. 2000).

In order to determine the existence and scope of the debtor's "legal or equitable interests"

for purposes of § 541(a)(1), it is well-established that federal courts typically must look to state

- 5 -

law. *See Butner v. United States*, 440 U.S. 48, 54 (1979) ("Congress has generally left the

determination of property rights in the assets of a bankrupt's estate to state law."); *O'Dowd*, 233

F.3d at 202 (first citing *Congress Talcott Corp. v. Gruber*, 993 F.2d 315, 319 (3d Cir. 1993);

then citing *In re Roach*, 824 F.2d 1370, 1374 (3d Cir. 1987)) ("While federal law defines what

types of property comprise the estate, state law generally determines what interest, if any, a

debtor has in property.").

### 1.   MCTLA

The relevant state law in this case is 53 Pa. Stat. and Cons. Stat. Ann. §§ 7101–505 (West

2016), commonly known as the Municipal Claims and Tax Lien Act (the "MCTLA"). Upon the

sale of the Property pursuant to § 7283(a) of the MCTLA, the Purchaser argues that he received

absolute title to the Property, divesting the Debtor of all interests in the Property, including the

right to possession, and leaving her merely a right to redeem the Property. Purchaser's Br. 4. The

Purchaser makes several arguments in support of this position.

First, the Purchaser argues that the explicit language of § 7283 provides a purchaser at a

tax sale with absolute title. *Id.* at 4, 9–11. Although the Purchaser is correct that § 7283 states

that a purchaser at a tax sale shall take absolute title to property sold at a tax sale, the statute also

specifically conditions the grant of absolute title to the purchaser upon the prior owner's right to

redeem such property:

> [T]he purchaser at such sale shall take and forever thereafter have, an absolute title
> to the property sold, free and discharged of all tax and municipal claims, liens,
> mortgages, grounds rents, charges and estates of whatsoever kind, *subject only to
> the right of redemption as provided by law*.

53 Pa. Stat. and Cons. Stat. Ann. § 7283 (emphasis added). The Court therefore must determine

the impact of the Debtor's right to redeem upon the Purchaser's interest in the Property.

The Purchaser next argues that the cases cited by the Debtor in her brief predated the codification of § 7293 (which sets forth the redemption process) in 1956 and, therefore, "could not have been interpreting the 'law' governing the tax sale of the Subject Property and any current statutory right to redemption." Purchaser's Br. 12. Moreover, the Purchaser argues that the cases cited by the Debtor are inapplicable to the case at hand because they address different tax sale statutes and "the substantial differences between the MCTLA and prior tax sale laws make them incomparable." *Id.* at 14.

By way of background, § 7293 of the MCTLA specifically amends § 32 of the Act of May 16, 1923, Pub. L. No. 207, 1923 Pa. Laws 207 ("Act").[4] In fact, the only difference between § 32 of the Act and § 7293(a) of the MCTLA is that: (1) the redemption period was shortened from one year under § 32 of the Act to nine months under § 7293(a); and (2) § 32 of the Act applied to all types of real property, and § 7293(a) does not apply to vacant property (which is now addressed in § 7293(c)). Specifically, § 32 of the Act provided in relevant part that:

> The owner of any property sold under a tax or municipal claim, or his assignees, or any party whose lien or estate has been discharged thereby, may redeem the same at any time within one year from the date of the acknowledgment of the sheriff's deed therefor, upon payment of the amount bid at such sale; the cost of drawing, acknowledging, and recording the sheriff's deed; the amount of all taxes and municipal claims, whether [or] not entered as liens, if actually paid; the principal and interest of estates and encumbrances, not discharged by the sale and actually paid; the insurance upon the property, and other charges and necessary expenses of the property, actually paid, less rents or other income therefrom, and a sum equal to interest at the rate of ten per centum per annum thereon, from the time of each of such payments.

§ 32, 1923 Pa. Laws at 223–24. Section 7293(a) now provides (with the new text underlined) that:

> The owner of any property sold under a tax or municipal claim, or his assignees, or any party whose lien or estate has been discharged thereby, may, except as provided

---

[4] 53 Pa. Stat. and Cons. Stat. Ann. § 7293 specifically references § 32 of the Act under its Credits section.

in subsection (c) of this section, redeem the same at any time within nine months
from the date of the acknowledgment of the sheriff's deed therefor, upon payment
of the amount bid at such sale; the cost of drawing, acknowledging, and recording
the sheriff's deed; the amount of all taxes and municipal claims, whether not entered
as liens, if actually paid; the principal and interest of estates and encumbrances, not
discharged by the sale and actually paid; the insurance upon the property, and other
charges and necessary expenses of the property, actually paid, less rents or other
income therefrom, and a sum equal to interest at the rate of ten per centum per
annum thereon, from the time of each of such payments.

53 Pa. Stat. and Cons. Stat. Ann. § 7293(a). The cases which analyzed the interests held by prior

owners and purchasers under a tax sale pursuant to § 32 of the Act thus are clearly applicable to

this Court's determination of the Debtor's and Purchaser's interest in the Property under

§ 7293(a) of the MCTLA.

The seminal case which analyzed the interests of prior owners and purchasers in property

sold under § 32 of the Act was *Easton v. Sulkin*, 19 Pa. D. & C. 152 (1933). In that case, the

court had to determine whether a prior owner was entitled to possession of property sold at a tax

sale under § 32. In making that determination, the court noted that, although the Act "says

nothing about the possession, yet it has been decided time and time again under very similar acts

that the party who is entitled to redeem is entitled to possession during the period allowed him

for redemption." *Id.* at 154. The court also held that statutes governing tax sales should be

"liberally construed in favour of the right of redemption," and a tax sale "leaves in the owner an

equity of redemption." *Id.* (quoting *Appeal of Gault*, 33 Pa. 94, 94 (1859)). The court ultimately

held that the purchaser in a tax sale only takes "defeasible title, liable to be defeated by a

redemption within the period prescribed by the statute." *Id.* (quoting *Appeal of Gault*, 33 Pa. at

94). Referring to similar tax sale statutes, the *Easton* court explained:

"The uniform understanding and belief of the profession and people of this
Commonwealth, for over half a century, has been, that a purchaser of unseated
lands for taxes, when he receives his deed, takes but an inchoate or inceptive title,
which requires the lapse of two years from the date of sale to ripen into an absolute
title. This it will do if the land be not redeemed in the mean time. The only certain

interest the buyer has up to that time, by virtue of his purchase, is in the money paid
. . . .

. . . .

In *City of Philadelphia, to use, v. Woodside*, 10 Pa. D. & C. 565, the syllabus
is: "Under the Municipal Claim Law of June 4, 1901, P. L. 364, the purchaser at
the sheriff's sale, on a lien for water-pipe, is not invested with any title to the land,
and the owner's title is not divested by the sale.

"In such case, the purchaser takes only an inchoate title which requires the
lapse of a year from the date of the sheriff's sale to ripen into an absolute title.

"If, before the expiration of the year, the owner seeks to redeem the
property, the purchaser, upon payment of the amount which the sheriff received,
must release his claim of title." This last contention as to the right to redeem,
precludes delivery of possession.

*Id.* (first quoting *Shalemiller v. McCarty*, 55 Pa. 186, 188 (1867); then quoting *City of

Philadelphia v. Woodside*, 10 Pa. D. & C. 565 (1928)). Thus, the purchaser in a tax sale under

§ 32 of the Act merely acquired inchoate, defeasible title which only became absolute title upon

the expiration of the redemption period. Moreover, the prior owner retained possession of such

property during the redemption period.

The holding in *Easton* has been adopted by many Pennsylvania courts, even after the

codification of § 7293, and remains good law today. *See,* e.g., *City of Philadelphia v. Novick*,

582 A.2d. 1363, 1366 (Pa. Super. Ct. 1990) (citing *Easton*, 19 Pa. D. & C. 152) (holding that,

with regard to redemption under § 7293, "title to the property sold is a defeasible one and does

not mature into a legal title until the period of redemption has expired"); *City of Philadelphia v.

Chicken's Place, Inc.*, 565 A.2d 182, 184 (Pa. Super. Ct. 1989) (holding that, with regard to

whether § 7293 imposes a duty on the purchaser of property to purchase insurance during the

redemption period, "a reasonable man with a defeasible interest in property would not

necessarily insure it against hazards until such a time that his interest became indefeasible").

- 9 -

Indeed, a bankruptcy court in the Western District of Pennsylvania recently addressed this issue and held that:

> Under Pennsylvania law, a purchaser at a tax sale acquires an inchoate, defeasible title which does not change the status or title of the property owner until the redemption period has passed. The purchaser's only absolute interest in the property until the redemption period expires is to receive the money paid on redemption. The purchaser has no claim to possession or ejectment against an owner during the redemption period.

*In re Hammond*, 420 B.R. 633, 635 (Bankr. W.D. Pa. 2009) (citations omitted).[5]

Not only did the Purchaser fail to consider these cases, but, based upon *City of Philadelphia v. F.A. Realty Investors Corp.*, 95 A.3d 377, 385 n.13 (Pa. Commw. Ct. 2014), he erroneously argues that Pennsylvania courts "turn[] to the mortgage foreclosure case law in determining the ownership interests after a tax sale under the MCTLA." Purchaser's Br. 10. As discussed below, the state law rights granted to prior owners and purchasers in property sold in a mortgage foreclosure sale are completely different than the rights given to prior owners and purchasers in a tax sale. In fact, the *F.A. Realty* court made no determination regarding ownership interests after a tax sale is held under the MCTLA. The court merely determined on appeal that a prior owner is permitted to file a petition to redeem property under § 7293 as soon as the tax sale has concluded and does not have to wait until the deed is acknowledged.[6] *F.A. Realty*, 95 A.3d at 384–86.

---

[5] It appears that the tax sale in that case also took place pursuant to 53 Pa. Stat. and Cons. Stat. Ann. § 7293. *In re Hammond*, 420 B.R. 633, 634 n.3 (Bankr. W.D. Pa. 2009).

[6] In *F.A. Realty*, the trial court held that a petition to redeem was filed prematurely because the prior owner had filed the petition two weeks after the tax sale but before the deed had been acknowledged. 95 A.3d at 384. On appeal, the City of Philadelphia argued that a petition to redeem cannot be filed until the redemption period begins after the acknowledgement of the deed. *Id.* The prior owner argued that a petition to redeem may be filed at any time prior to the date that is nine months after a deed is acknowledged and may even be filed immediately after the conclusion of a tax sale, not just after the deed is first acknowledged. *Id.* Because the court found that the statute was ambiguous as to the timing of the filing of the petition to redeem, the court considered the consequences of each argument posited by the prior owner and purchaser. *Id.* at 386 (citing 1 Pa. Stat. and Cons. Stat. Ann. § 1921(c)(7)).

The *F.A. Realty* court relied upon two mortgage foreclosure cases for the proposition "that the prior owner is entitled to possession of the property until the sale is completed by the acknowledgment and delivery of the deed to the purchaser." *Id.* The court noted that "[d]enying owners a right to redeem the property during a time they are entitled to possession would lead to an absurd result." *Id.* The court thus correctly held that a mortgagor's right to possess property sold in a mortgage foreclosure sale terminates, at the latest, upon acknowledgement of the deed. This reasoning, however, does not extend to tax sales.

The ownership interests of prior owners and purchasers under mortgage foreclosure sales are completely different than the ownership interests of prior owners and purchasers in tax sales under § 7293. First, the prior owner in a mortgage foreclosure sale has <u>no</u> right to redeem property after the sale occurs. Rather, under 41 Pa. Stat. and Cons. Stat. Ann. § 404, the prior owner may only "cure" any default under the mortgage up until "one hour prior to the commencement of bidding at a sheriff sale or other judicial sale on a residential mortgage obligation." As discussed in *In re Townsville*, 268 B.R. 95 (Bankr. E.D. Pa. 2001):

> Under Pennsylvania law, a mortgagor has the right to redeem mortgaged property until the fall of the hammer at an originally scheduled sheriff's sale. Once the hammer has fallen at the sheriff's sale, the mortgagor has no right to redeem. The purchaser at the sheriff's sale obtains equitable ownership of the property and upon settling with the Sheriff, the right to compel delivery of the deed. . . . Thus, at the fall of the hammer, the mortgagor loses rights and the purchaser acquires rights and obligations. . . . Therefore, I conclude that, under the law of Pennsylvania, property is sold at a foreclosure sale on the date the sale is held.

---

Ultimately, the court found that it would be more difficult for a prior owner to redeem property sold in a tax sale if the prior owner was only permitted to file a petition to redeem after the date the deed was acknowledged because the prior owner would have to reimburse the purchaser for a number of costs incurred between the date of sale and the date the deed was acknowledged. *Id.* Since the purpose of the tax sale statute was "to collect delinquent taxes, and not to strip property owners of their properties," the court ultimately agreed with the prior owner's position that the property owner can file a petition to redeem as soon as the tax sale has concluded. *Id.* (citing *City of Philadelphia v. Manu* 76 A.3d 601 (Pa. Commw. Ct. 2013)) (noting that the Pennsylvania legislature did not intend "to increase the difficulty of the redemption process for property owners").

*Id.* at 118–19 (citations omitted).

Thus, at the conclusion of a mortgage foreclosure sale, the prior owner has no right to redeem property and the purchaser "obtains vested equitable ownership of the property." *In re Donovan*, 183 B.R. 700, 701 (Bankr. W.D. Pa. 1995) (first citing *Butler v. Lomas & Nettleton Co.*, 862 F.2d 1015 (3d Cir. 1988); then citing *Pa. Co. v. Broad St. Hosp.*, 47 A.2d 281, 283 (Pa. 1946)). "Upon acknowledgment and delivery of the deed, legal title, too, passes to the purchaser." *In re Brown*, 75 B.R. 1009, 1012 (Bankr. E.D. Pa. 1987) (citing *In re Rouse*, 48 B.R. 236, 240–41 (Bankr. E.D. Pa. 1985)).[7] In sum, when property is sold in a mortgage foreclosure sale, the prior owner loses all right to redeem the property and holds bare legal title and a right to possess such property until legal title passes to the purchaser upon acknowledgement and delivery of the deed. The purchaser, on the other hand, possesses a vested equitable interest in such property at the time of the sale and absolute title upon acknowledgement of the deed.

In contrast, as discussed above, § 7293 clearly provides that the prior owner in a tax sale retains the right to redeem such property until nine months *after* the deed is acknowledged. During this redemption period, the prior owner may continue in possession of the property and the purchaser merely holds defeasible title in the property until the redemption period expires. Upon the expiration of the redemption period, the purchaser holds absolute title to the property and the prior owner loses all rights to possession of the property.

Thus, the rights of prior owners and purchasers in a tax sale are completely different from the rights of mortgagors and mortgagees in a mortgage foreclosure sale and there is absolutely no

---

[7] At least one bankruptcy court has held that legal title to property sold at a mortgage foreclosure sale actually passes to the purchaser at the time that the purchaser fully complies with all terms of the sheriff's sale, even before the deed is acknowledged and delivered. *See In re Pulcini*, 261 B.R. 836, 841 (Bankr. W.D. Pa. 2001) (stating that the "purchaser's equitable interest becomes a 'complete title' upon complying with the terms of the sale").

basis to rely upon Pennsylvania mortgage foreclosure law in connection with determining the

rights of owners and purchasers in tax sales.

Finally, the Purchaser dismisses the holdings in *In re Terry*, 505 B.R. 660, 668 (Bankr.

E.D. Pa. 2014), and *In re Minor*, 531 B.R. 564, 569–72 (Bankr. E.D. Pa. 2015), based upon the

holding in *F.A. Realty*. Purchaser's Br. 14–15. In fact, after filing his brief, both of these cases,

which support this Court's conclusion, were affirmed on appeal. In *In re Terry*, 543 B.R. 173

(E.D. Pa. 2015), the district court specifically held that:

> [T]he purchaser's title does not become absolute until the redemption period
> expires. In other words, the purchaser acquires a defeasible title, subject to the
> debtor's equitable right of redemption during the redemption period. The debtor's
> equitable interest in the property inures to the benefit of the bankruptcy estate.

*Id.* at 180 (citations omitted). And in *In re Minor*, Bankr. No. 13-19278, Civ. A. No. 15-3562,

2016 WL 1256286 (E.D. Pa. Mar. 30, 2016), the district court similarly held that the purchaser in

a tax sale under § 7283 of the MCTLA "did not receive absolute title at the tax sale and that

Debtor still has an interest in the Property." *Id.* at *12; *see also id.* (favorably quoting *City of

Philadelphia v. Novick*, 582 A.2d. 1363, 1366 (Pa. Super. Ct. 1990), for the proposition that "title

to the property sold is a defeasible one and does not mature into a legal title until the period of

redemption has expired").

### 2.    The Redemption Amount May Be Paid in Installments

The Purchaser also argues that the redemption amount may not be paid in installments as

evidenced by the holding in *City of Philadelphia v. Keilyk*, 551 A.2d 1094, 1096 (Pa. Super. Ct.

1988). Purchaser's Br. 16–17. However, the court in *Keilyk* merely held that the debtor, which

owned a one-third interest in property sold in a tax sale, could not redeem his one-third interest

in such property by only paying one-third of the redemption amount. 551 A.2d at 1096. Here, the

Debtor intends to pay the full redemption amount, albeit over time.

3.     There Is No Requirement that the Redemption Amount Must Be
Paid in Full Within the Nine Month Period

Finally, the Purchaser argues that § 7293(a) "explicitly states that redemption occurs

upon payment, and that the right must be exercised within nine (9) months." Purchaser's Br. 18.

However, the language of the statute does not require that the redemption amount must be paid

within nine (9) months of the acknowledgement of the deed. Rather, the prior owner must merely

start the redemption process within nine (9) months of the acknowledgement of the deed by

filing a petition to redeem pursuant to § 7293(b). Section 7293(b) provides that, in order to

redeem property sold at a tax sale, the former owner must file a petition in the appropriate court,

demonstrate a readiness to pay the redemption amount, obtain a rule from the court, and pay the

redemption amount.[8]

With regard to the timing of the payment of the redemption amount, the district court in

*In re Terry* specifically recognized that "§ 7293 does not require that the redemption amount be

paid in full before the expiration of the redemption period." 543 B.R. at 181 (first citing *City of

Philadelphia v. Chin*, 535 A.2d 110, 112 (Pa. Super. Ct. 1987); then citing *City of Philadelphia

v. Taylor*, 465 A.2d 33, 35 (Pa. Super. Ct. 1983)); *see also Chin*, 535 A.2d at 112 (reviewing the

predecessor statute to § 7293 which permitted a one year redemption period, the court held that

"§ 7293(a) does not mandate that *all* acts of redemption, including final payment of the

redemption money, must be completed within one year from the date of the acknowledgement of

the sheriff's deed"); *Taylor*, 465 A.2d at 35 (stating that not "all the acts of redemption must be

---

[8] Section 7293(b) provides in relevant part that:

Any person entitled to redeem may present his petition to the proper court, setting forth the facts,
and his readiness to pay the redemption money; whereupon the court shall grant a rule to show cause
why the purchaser should not reconvey to him the premises sold; and if, upon hearing, the court
shall be satisfied of the facts, it shall make the rule absolute, and upon payment being made or
tendered, shall enforce it by attachment.

completed within [nine months] from the date of the acknowledgment of the sheriff's deed").

Rather, the prior owner need only "*begin* the redemption process" by filing the initial petition to

redeem and setting forth the facts and the prior owner's readiness to redeem. *In re Terry*, 543

B.R. at 181 (quoting *Chin*, 535 A.2d at 112). Moreover, courts will permit a delay in the

payment of the redemption amount to the extent that a purchaser is "the major contributor to the

delay in the redemption process" or the delay is caused by a "good faith dispute" regarding the

determination of the redemption amount. *Chin*, 535 A.2d at 113.

Based upon the foregoing, it is clear that the Purchaser does not hold absolute title to the

Property. The Court now turns to the Purchaser's argument that he does not hold a secured claim

which may be modified under § 1322(b).

> **B.   The Purchaser Holds a Secured Claim Against the Debtor Which May
> Be Paid Out Over Time Under the Debtor's Plan Pursuant to
> § 1322(b)(2)**

Under the Debtor's Plan, the Debtor seeks to pay the redemption amount to the Purchaser

over time as a secured claim under her Plan pursuant to § 1322(b)(2). Section 1322(b)(2) of the

Bankruptcy Code, of course, empowers a debtor, through a Chapter 13 plan, to "modify the

rights of holders of secured claims, other than a claim secured only by a security interest in real

property that is the debtor's principal residence."[9] 11 U.S.C. § 1322(b)(2).

> 1.   The Purchaser Holds a Secured Claim

The Purchaser strenuously argues that he does not hold a secured claim against the

Debtor because he does not want the Debtor to modify his right to receive the redemption

amount under the Plan pursuant to § 1322(b)(2). This position, however, is contradicted and

---

[9] A "security interest" is a "lien created by an agreement" pursuant to § 101(51). Here, the Purchaser and Debtor have never entered into an agreement to create a lien, and the Purchaser therefore does not hold a security interest in the Property.

undermined by the fact that he has filed a Claim and an Amended Claim pursuant to § 501 and, in both instances, certified that he holds a *secured claim* against the Debtor arising from his purchase of the Property in the Tax Sale.

Under § 502(a), a "claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." Here, no party has objected to the Claim or the Amended Claim and the Purchaser has not withdrawn his Claim or Amended Claim.[10] Accordingly, the Purchaser is bound by the filing of the Claim and the Amended Claim and holds an allowed secured claim. *See, e.g.*, *In re Pennington*, No. 11-80101-G3-13, 2015 WL 7746295, at *3 (Bankr. S.D. Tex. Nov. 30, 2015) (concluding, where a creditor filed a proof of claim and failed to object to the debtor's Chapter 13 plan, which paid the creditor's claim, but did not provide it with adequate protection, that the creditor was "bound by its proof of claim and the confirmed plan" and therefore could not request adequate protection post-confirmation).

Even if the Purchaser had asserted that his objection to confirmation of the Plan constituted a withdrawal of his Claim and Amended Claim—he has not—the Court would have deemed him to hold a secured claim in connection with his right to be paid the redemption amount. In determining whether a party holds a secured claim against a debtor, courts first look to the definition of "claim" under the Bankruptcy Code in § 101(5), which provides that a claim is a:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced

---

[10] In fact, the City objected to confirmation of the initial Chapter 13 plan filed by the Debtor, on the grounds that the Debtor did not propose to pay the full amount of the Amended Claim. The Debtor subsequently amended her plan to pay the full amount of the Amended Claim.

to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

Congress intended "claim" to have the "*broadest possible definition*" so that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." *In re Grossman's Inc.*, 607 F.3d 114, 121 (3d Cir. 2010) (quoting H.R. Rep. No. 95-595, pt. 3, at 309 (1977)). The Supreme Court has opined that claims are to be defined in the "broadest available" terms, *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 302 (2003) (quoting *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991)), and has characterized a claim as "nothing more nor less than an enforceable obligation," *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559 (1990).

In *In re M. Frenville Co.*, 744 F.2d 332 (3d Cir. 1984), the Third Circuit initially adopted the "accrual test" for determining when a claim arises, and held that "the existence of a valid claim depends on: (1) whether the claimant possessed a right to payment; and (2) when that right arose," as determined under relevant nonbankruptcy law. *In re Grossman's Inc.*, 607 F.3d at 119 (citing *In re Remington Rand Corp.*, 836 F.2d 825, 830 (3d Cir. 1988)). However, in 2010, the Third Circuit overruled its prior holding in *Frenville* because it recognized that the accrual test imposed "too narrow an interpretation of a 'claim' under the Bankruptcy Code." *Id.* at 121 (quoting *Epstein v. Official Comm. of Unsecured Creditors of Estate of Piper Aircraft Corp.*, 58 F.3d 1573, 1576 n.2 (11th Cir. 1995)). The Court noted that it had failed "to give sufficient weight to the words modifying [claim]: 'contingent,' 'unmatured,' and 'unliquidated.'" *Id.* As a result, the Court concluded that the "accrual test in *Frenville* does not account for the fact that a 'claim' can exist under the Code before a right to payment exists under state law." *Id.* Thus, "a right to payment need not be currently enforceable" to be a claim under the Bankruptcy Code. *In*

*re Keeler*, 440 B.R. 354, 363 (Bankr. E.D. Pa. 2009) (quoting *Pearl-Phil GMT (Far E.) Ltd. v.*

*Caldor Corp.*, 266 B.R. 575, 581 (S.D.N.Y. 2001)); *see also In re Ruitenberg*, 745 F.3d 647, 652

(3d Cir. 2014) (holding that "a non-debtor spouse may file a pre-petition claim against the estate

based on his or her expected equitable share of the marital property even if no final judgment of

divorce existed at the time of the bankruptcy filing").[11]

Furthermore, an enforceable obligation exists even where the right to payment lies not

against the debtor, but against his property. *See* 11 U.S.C. § 102(2) (providing that a "'claim

against the debtor' includes [a] claim against property of the debtor"). For example, a creditor's

right to the proceeds of the sale of mortgaged property "corresponds to an 'enforceable

obligation' of *the debtor*" even if the debtor's personal liability on the underlying note is

discharged. *Johnson*, 501 U.S. at 83–84 (emphasis added) (holding that the Tenth Circuit Court

of Appeals wrongly decided that the discharge of the debtor's personal liability extinguished the

creditor's claim). Therefore, a creditor's right might simultaneously "constitute both a pre-

petition claim and a property interest." *In re Verner*, 318 B.R. 778, 789 (Bankr. W.D. Pa. 2005).

With regard to whether a claim is secured, § 506(a)(1) provides that "[a]n allowed claim

of a creditor secured by a lien on property in which the estate has an interest . . . is a secured

claim." A "lien" is defined under § 101(37) as a "charge against or interest in property to secure

payment of a debt or performance of an obligation."

---

[11] Enforceable obligations are liberally construed such that they might arise from the duress that results
from the threat of the loss of a valuable asset or right. For example, if a broadband service provider would forfeit its
operating license if it failed to pay the associated fees, then the fees are enforceable obligations even though they are
mere "regulatory condition[s]." *See NextWave*, 537 U.S. at 302–03 (rejecting the FCC's contention that the license
fees it charged were not claims). Similarly, if a debtor's probation would be revoked if she failed to make her
restitution payments, then they are obligations enforceable in criminal proceedings by "the substantial threat of
revocation of probation and incarceration." *See Davenport*, 495 U.S. at 559–60 (concluding that restitution
payments were within the scope of § 101(5)(A) despite their "purpose or enforcement mechanism").

The Purchaser argues that he does not hold a claim against the Debtor because the Debtor is not legally obligated to pay him the redemption amount. Since the Debtor must voluntarily elect to redeem the Property and the Purchaser "cannot force the Debtor to redeem" the Property, the Purchaser argues that the Debtor is not legally obligated to pay the redemption amount to him. Purchaser's Br. 25. The Debtor argues that, based upon her right of redemption, the Purchaser has a statutory lien on the Property to secure payment of the redemption amount within the meaning of Bankruptcy Code § 101(37) and (53). Debtor's Br. 25.

Based upon the Third Circuit's expansive reading of the definition of claim under § 101(5)(A) in *In re Grossman's*, this Court concludes that the Purchaser holds a claim in this proceeding. Specifically, an enforceable obligation encompasses both contingent and unmatured rights to payment, regardless of the basis for the contingency, and a claim may exist under the Bankruptcy Code before a right to payment even exists under state law. *In re Rodriguez*, 629 F.3d 136, 138–39 (3d Cir. 2010) (quoting *In re Grossman's*, 607 F.3d at 121).

Neither the Bankruptcy Code nor Third Circuit law places any limitation on the concept of a "contingent" right to payment, and the fact that the Debtor is in control of the contingency here is of no moment. At the time of the Debtor's filing, the Purchaser clearly had a right to payment of the redemption amount contingent upon whether the Debtor timely elected to redeem the Property. Once the contingency was triggered by the Debtor's timely election to redeem the Property under her Plan, the Purchaser held an enforceable obligation against the Debtor for payment of the redemption amount secured by the underlying Property.[12]

---

[12] Moreover, if the Debtor had failed to timely elect to redeem the Property under her Plan, she would have lost all of her rights in the Property and the Purchaser would have held absolute title to the Property. This enforcement mechanism makes redemption payments comparable to restitution payments and license fees as all three obligations are enforced by the threat of the loss of a valuable right or asset.

Because the Purchaser's right to payment of the redemption amount is secured by a "charge" against the Property equal to the redemption amount calculated under state law, the Purchaser holds a secured claim against the Debtor.

The Purchaser also argues that, under the MCTLA, the Debtor's redemption right is "exercise[d]" only "upon the payment of the Redemption Amount so there is no moment in time where the Debtor owes a debt to the Purchaser. Rather, a redemption right under state law can only be exercised when the payment is present, akin to a substantially contemporaneous exchange." Purchaser's Br. 25.

As discussed above, a prior owner's exercise of a redemption right need not occur contemporaneously with the payment of the redemption amount under the MCTLA. The redemption procedures set forth in § 7293(b) are triggered by the filing of a petition to redeem by the prior owner. After the petition to redeem is filed, the prior owner must demonstrate a readiness to pay the redemption amount and obtain a rule from the court, and, only then, is the prior owner required to pay the redemption amount. *See* 53 Pa. Stat. and Cons. Stat. Ann. § 7293(b) (stating that, if appropriate pursuant to a rule to show cause why a property should not be redeemed, "[the court] shall make the rule absolute, and upon payment being made or tendered, shall enforce it by attachment"). Thus, as recognized in *Terry*, the prior owner need only "*begin* the redemption process" by filing the initial petition to redeem. 543 B.R. at 181 (quoting *Chin*, 535 A.2d at 112). Here, the Debtor exercised her right to redeem the Property under her Plan, and there was no "contemporaneous exchange," as posited by the Purchaser.

> 2.    Redemption Amounts May Be Modified and Paid As Secured Claims Over Time Under § 1322(b)(2)

This Court recognizes that bankruptcy courts across the country are divided on the issue of whether the redemption amount associated with tax sales can be paid out over time under

§ 1322(b)(2).[13] Many courts have concluded that permitting a debtor to pay the redemption

amount beyond the time period permitted under the applicable state statute directly conflicts with

§ 108(b)'s limitation on the timing of the right to redeem and impermissibly expands debtors'

rights under state law. *See In re Froehle*, 286 B.R. 94, 103 (B.A.P. 8th Cir. 2002) (holding that

under applicable state law, "redemption requires a lump-sum payment, and again, if we were to

permit the Debtor to pay the redemption amount through her Chapter 13 plan, we would be

impermissibly enlarging her rights under state law"); *In re Murray*, 276 B.R. 869, 877 (Bankr.

N.D. Ill. 2002) (holding that § 108(b) requires a debtor to redeem taxes within the sixty-day

extension period therein and that the failure to do so cannot be further extended under

§ 1322(b)).

Section 108(b) provides that:

> [I]f applicable nonbankruptcy law . . . fixes a period within which the debtor or an
> individual protected under section . . . 1301 of this title may file any pleading,
> demand, notice, or proof of claim . . . cure a default, or perform any other similar
> act, and such period has not expired before the date of the filing of the petition, the
> trustee may only file, cure, or perform, as the case may be, before the later of– (1)
> the end of such period . . . or (2) 60 days after the order for relief.

11 U.S.C. § 108(b). Reading § 108(b) to preclude debtors from extending these redemption

payment periods under Chapter 13 plans directly conflicts with § 1322(b)(2), which explicitly

permits a debtor to modify a secured claim over time. As long recognized, "where one section of

the Bankruptcy Code explicitly governs an issue, another section should not be interpreted to

cause an irreconcilable conflict." *Bank of Commonwealth v. Bevan*, 13 B.R. 989, 994 (E.D.

Mich. 1981) (citing *Richards v. United States*, 369 U.S. 1, 11 (1962)); *see also In re Bates*, 270

---

[13] The United States Bankruptcy Court for the Central District of California compiled a list of courts that
"have permitted debtors to modify their postsale right of redemption that arose after a tax sale under § 1322(b)(2),
concluding that the third-party purchaser at the tax sale holds a 'claim.'" *In re Richter*, 525 B.R. 735, 746–47
(Bankr. C.D. Cal. 2015). The court also compiled a list of courts that "have disagreed and have not allowed such
modifications based on different rationales," to which the court itself belonged. *Id.* at 746–47, 746 n.15.

B.R. 455, 466 (Bankr. N.D. Ill. 2001) (holding that "nothing in § 108(b) transforms the extension

of a non-bankruptcy right into a negation of bankruptcy rights specifically accorded elsewhere in

the Code"). This Court accordingly holds that the proper way to reconcile § 108(b) with

§ 1322(b)(2) is to require a debtor to elect to redeem by the deadline set forth in § 108(b), but to

permit payment of the redemption amount over time as a secured claim pursuant to

§ 1322(b)(2).[14]

Finally, it is generally accepted that the Bankruptcy Code trumps state law in this area of

the law. *See In re Sadler*, Bankr. Case No. 13-17696, Case No. 1:14CV2312, 2015 WL 9474174,

at *7 (N.D. Ohio Dec. 29, 2015) (holding that "§ 1325(a)(5)(B) expressly permits modification

of secured claims" based upon a finding that "the Bankruptcy Code trumped state law claims").

Indeed, the Supreme Court has made it abundantly clear that the determination of the allowance

of claims and distribution of a debtor's assets must be made by applying the equitable principles

set forth in the Bankruptcy Code:

> In determining what claims are allowable and how a debtor's assets shall be
> distributed, a bankruptcy court does not apply the law of the state where it sits . . .
> . [B]ankruptcy courts must administer and enforce the Bankruptcy Act as
> interpreted by this Court in accordance with authority granted by Congress to
> determine how and what claims shall be allowed under equitable principles.

*Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 162–63 (1946) (first citing *Erie

R. Co. v. Tompkins*, 304 U.S. 64 (1938); then citing *Heiser v. Woodruff*, 327 U.S. 726 (1946);

then citing *Am. Sur. Co. v. Sampsell*, 327 U.S. 269, 272 (1946); and then citing *Pepper v. Litton*,

308 U.S. 295, 303–06 (1939)).

---

[14] It should be noted that in the context of redemption payments on mortgage foreclosure judgments, the
Third Circuit has clearly held that § 1322(b)(2) is not limited by § 108(b). *See First Nat'l Fid. Corp. v. Perry*, 945
F.2d 61, 65 (3d Cir. 1991) (stating that § 1322(b)(2) "would clearly authorize" redemption payments beyond the
§ 108(b) extension for claims not secured by a security interest in a debtor's primary residence); *accord In re
LaMont*, 740 F.3d 397, 409 (7th Cir. 2014) (citing *In re Bates*, 270 B.R. at 465–66) (confirming that, by extending
rights granted to debtors in nonbankruptcy law, § 108(b) does not negate rights granted in the Bankruptcy Code by
§ 1322(b)(2)).

**C.    The Debtor Was Not Required to File a Motion or Petition to Redeem Because She Has Elected to Treat the Purchaser's Right to Be Paid the Redemption Amount As a Secured Claim Which Can Be Modified Under § 1322(b)(2)**

The Purchaser argues that, even if his interest is subject to § 1322(b)(2), the Debtor's attempt to redeem the Property did not conform to applicable federal and state rules. First, the Purchaser asserts that the Debtor should have filed a motion to redeem the property under Rule 6008 in this proceeding. Purchaser's Br. 20. Second, the Purchaser argues that the Debtor should have filed a petition to redeem in state court or should have removed the "tax sale action to bankruptcy court to file the necessary petition to redeem." *Id.* In response, the Debtor argues that neither Rule 6008 nor applicable nonbankruptcy law control as long as her Plan conforms to §§ 1322(b)(2) and 1325 of the Bankruptcy Code. Debtor's Br. 30–31. Essentially, according to the Debtor, the MCTLA sets forth the parties' rights and the Bankruptcy Code sets forth how to dispose of those rights. *Id.*

Contrary to the Purchaser's arguments, neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure require a debtor to file a motion to redeem real property. Rule 6008 states that "[o]n motion by the debtor . . . and after hearing on notice as the court may direct, the court may authorize the redemption of property from a lien or from a sale to enforce a lien in accordance with applicable law." Fed. R. Bankr. P. 6008. However, pursuant to § 722, Rule 6008 is only applicable in Chapter 7 proceedings. Fed. R. Bankr. P. 6008 advisory committee notes. Moreover, an individual in a Chapter 7 proceeding can only redeem "tangible personal property," not real property. 6 *Collier on Bankruptcy* ¶¶ 722.01–.02[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014) ("Section 722 of the Bankruptcy Code provides that an individual debtor may redeem consumer goods from a lien securing a dischargeable consumer debt . . . .").

Following the holding of the district court in *In re Minor*, "[n]either Rule 6008 nor § 108(b) require Debtor to file a motion or petition to redeem instead of filing a Chapter 13 plan to pay a secured claim under § 1322(b) where appropriate." 2016 WL 1256286, at *13 (citing *In re Kasco*, 378 B.R. 207, 212–13 (Bankr. N.D. Ill. 2007)). Moreover, the *Minor* court noted with approval the holding by the Seventh Circuit that "[t]he purpose behind section 108(b) is to permit the debtor an extension of time for doing certain acts necessary to preserve his rights. It would be anomalous to apply it to restrict debtors' rights." *Id.* at *13 n.124 (quoting *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1216 (7th Cir. 1984)). As in *Minor*, the Debtor in this case elected to modify the Purchaser's secured claim by paying the redemption amount over time under her Plan pursuant to § 1322(b)(2). This is distinguishable from a redemption under applicable state law, and the Debtor therefore does not need to take any action under state law to redeem the Property. *See In re LaMont*, 740 F.3d 397, 409 (7th Cir. 2014) (stating that § 108(b) does not apply where a secured claim is disposed of under a debtor's plan because the purchaser is "*not* formally redeeming the property"); *In re Terry*, 505 B.R. 660, 668 (Bankr. E.D. Pa. 2014) (allowing a debtor to make redemption payments through a Chapter 13 plan); *In re Hammond*, 420 B.R. 633, 637 (Bankr. W.D. Pa. 2009) (allowing the same).

Finally, other than denying that he has a claim subject to § 1322(b)(2) and arguing that the Debtor did not properly file a motion to redeem the Property, the Purchaser has not articulated any reason why confirmation should be denied under § 1325 of the Bankruptcy Code.

## IV.    CONCLUSION

For the foregoing reasons, the Purchaser's objections to confirmation of the Debtor's

Second Amended Chapter 13 Plan are overruled. An appropriate order follows.

Date: May 6, 2016

_____
Ashely M. Chan
United States Bankruptcy Judge